CHEHARDY, Judge.
The Parish of Jefferson filed suit against Mrs. Emily Boudreaux, widow of John F. Keller, to expropriate a strip of ground that commences at the northeast corner of Belle Chasse Highway and Timberlane Drive and which measures 37.86 feet front on Belle Chasse Highway, 883.50 feet along Timber-lane Drive and 37.86 feet front on the existing right of way of Commerce Street. The property, which has commercial and residential zoning, is the eastern' portion of adjoining lots owned by appellant.
The public purpose alleged in plaintiff’s petition is the widening of Timberlane Drive. A tender for the taking in the amount of $62,500 was timely made.
Defendant answered denying the right of taking and claiming that the value of the subject property exceeds in value the amount tendered.
Judgment was rendered allowing the expropriation but increasing the compensation from $62,500 to $96,837.50. The trial court judge concluded that the 18,000 square feet of commercial property taken should be valued at $3.50 per square foot, amounting to $63,000; that the remaining 8,535 square feet of residential footage should be valued *438 at $2.50 per square foot, amounting to $21,-337.50; and that there should be a severance award in the amount of $12,500.
Both plaintiff and defendant appeal; however, plaintiff asks only that the judgment be amended decreasing the award to $71,000.
In Evangeline Parish Police Jury v. Deville, 247 So.2d 258, 260 (La.App. 3d Cir. 1971), the court stated:
“ * * * It is well settled in our jurisprudence that the extent of the property to be expropriated and the location thereof are within the sound discretion of the body possessing the power of eminent domain, and the determination of same will not be interfered with if made in good faith. * * *
“It is also a general rule in such a case that the amount of land and the nature of the acreage taken must be reasonably necessary for the accomplishment of the proposed project. Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491 (1959); Texas Pipeline Company v. Barbe, 229 La. 191, 85 So.2d 260 (1956); Greater Baton Rouge Port Commission v. Watson, et al., supra. However, when the reasonableness of the amount of land or of the nature of the interest taken is challenged and the taker is a political subdivision of the State of Louisiana, such as is' the case herein, the burden is on the defendant landowner to establish that the decision of the taker is unreasonable or has been made in bad faith. * * * ”
In our opinion the defendant, Emily Bou-dreaux Keller, has failed to carry the burden prescribed by Evangeline, supra. The record discloses that: (1) the drainage canal bordering Timberlane Drive has become silted up and filled with debris and this has created a “bottleneck” in the drainage system of Jefferson Parish on the West Bank of the river, increasing the possibility of flooding; and (2) the canal cannot be dug deeper due to the poor cohesive quality of the soil, necessitating widening of the sides of the canal to give it adequate “slope.”
Kenneth Pettle, accepted by the court as a qualified expert in civil engineering, testified that he was familiar with the drainage plans for the Wright Avenue Canal; that the engineering firm he is employed by prepared the master drainage plan for the Ninth Jefferson Parish Drainage District and that 30 feet would be required for “the street plus utilities”; that there were other alternatives open but each with drawbacks; and that these drawbacks, the economics and the logical approach were taken into consideration when the recommendations were made to the Parish.
Pettle further testified that the widening and deepening of the canal will improve the drainage in the general area of Terrytown by moving water out of there to Barataría and eventually to the Hero pump station.
Emile Cloutet, engineering division supervisor of the Parish of Jefferson Department of Public Utilities, also testified that the banks of the canal have been eroding, thereby narrowing the usable width of Tim-berlane Drive to only 18 feet when, in fact, each lane of a two-lane roadway such as this one should be at least 12 feet in width. He also said that the decision of the Parish to acquire 30 feet was made by both the drainage and roadway authorities and that this should allow Timberlane Drive to be adequately widened. Cloutet also testified that this widening would eliminate “the dangerous curb in that asphalt roadway and it would be well away from the canal.” He also testified that the roadway to be widened is approximately 18 feet but that this two-way street should be a minimum of 12 feet each. He also testified that widening of the road would allow the elimination of a dangerous reverse curve condition in Tim-berlane Drive.
Although all of plaintiff’s witnesses testified that there were other methods of solving the drainage problems of this canal, as did defendant’s expert, it was pointed out that all alternative methods would be much more costly for the Parish. We do not find that “unreasonableness” or “bad faith” on the part of the Parish in its exercise of the power of eminent domain required under our jurisprudence if we were *439 to deny the taking of defendant’s property. We find that the acreage being taken is reasonably necessary for accomplishment of the project proposed by Jefferson Parish.
Regarding the challenge to the amount of the award in the instant case, our own standard of review was well articulated in the case of City of New Orleans v. Giraud, 346 So.2d 1113 (La.App.1977), wherein this court stated at page 1118:
“ * * * In ascertaining the market value, much discretion is given to the trial judge in weighing the testimony of experts, and his finding of value based on such expert testimony will not be disturbed unless clearly erroneous. * * ”
It was also noted in Evangeline, supra, at page 261:
“The trial judge has much discretion in determining whose testimony on land values he will accept so long as he satisfies himself that the witness has had an opportunity to familiarize himself with land values in the area. * * *
“In an excellent treatise entitled Eminent Domain in Louisiana having to do with a general analysis of expropriation law and practice by Professors Dakin and Klein of the Louisiana State University Law School, and in which they cite numerous cases supporting their conclusions, we find the following language
* * * * * *
‘ * * * When several witnesses employ the comparable sales approach, the opinion of the witness who relies on sales of property which the court feels are more comparable to the property taken will be accorded greater weight * * * > »
Both plaintiff and defendant produced expert testimony at the trial regarding the value of the land to be taken by the Parish. The plaintiff’s expert Joseph A. Billa relied on comparable sales in the general area which he adjusted upward‘or downward depending on the differences between those properties and the subject property in regard to zoning, time of sale, etc. He concluded that the value of the residential part taken was $2.50 per square foot, or $21,-337.50, that the value of the commercial part was $66,095.05, and that inflation should not be considered a factor in a determination such as this one, based on the system he uses to arrive at an appraisal figure. Mr. Billa added that since this was a “depressed” or forced sale he called the areas of doubt in the owner’s favor, but he did not feel an award of severance was due in the present case.
Frederick Guice testified as an expert for the defendant and said-he did not use com-parables but a market data approach in appraising the property. He concluded that the commercial part of the property was worth $76,487 and the residential part was worth $28,203. He did not feel there was any severance award due for the commercial part of the property, but concluded that the residential portion would suffer a loss of value by 25% per square foot due to the fact that the resulting size and slope of the remaining property, after the taking, would result in significant limitations on what could be built on these lots. Guice did feel, however, that inflation was a factor to be considered and incorporated a figure of 9% in arriving at his appraisal values.
Concerning whether or not to allow a 9% inflationary factor and a severance award to defendant, we agree with the trial judge, who observed:
“Although the present state of the economy may warrant an acknowledgement of an inflationary rate of 9%, the Court is of the opinion, that land, like any other commodity, may or may not be subject to general trends in the economy, may be a variable in itself, and that it would be unreasonable to fix the status of property with a fixed inflationary rate without direct proof and evidence in this area. Therefore, this part of plaintiff’s claim is denied. The Court, does feel that plaintiff’s parcel No. 3, did sustain severance damage in that its lot sizes were reduced by a depth of approximately 38', thus making said lots less attractive, in *440 the opinion of the Court for resale. Based on the formula used by Mr. Guice, and applying the amount set by the Court of $2.50 per sq. ft., this formula entitled plaintiff to a severance award of $12,-500.00.”
Although both experts were well qualified, we must conclude, after a review of the record, that the trial court judge did not abuse his discretion in awarding $3.50 per square foot or $63,000 for the 18,000 square feet of commercial, $2.50 per square foot or $21,337.50 for the 8,535 square feet of residential, and a severance award of $12,500, for a total'award to defendant of $96,837.50.
The judgment of the trial court is affirmed.

AFFIRMED.